IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                       Crim. No. 20-1258 KG

CODY ALLAN LITTLE,

    Defendant.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court on Defendant's Amended Motion to Suppress, filed June 24, 2020. (Doc. 30). Defendant seeks to suppress statements he made during custodial interrogations on October 19, 2019, and January 25, 2020, arguing they were obtained in violation of his Fifth Amendment rights as set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966). The United States filed a response on July 8, 2020, (Doc. 33), and an amended response on August 10, 2020, (Doc. 44). The Court held an evidentiary hearing on August 11, 2020. (Doc. 45) (Clerk's Minutes). The Court also reviewed the audio and video evidence submitted by the United States in its entirety. (Doc. 45) (Exhibits 1-4, 6, 10, 13). Having considered the Motion to Suppress, the accompanying briefing, the evidence, and counsel's arguments at the evidentiary hearing, the Court denies the Motion to Suppress.

    I.     *Findings of Fact*

       On October 15, 2019, Lovington police officers were called to 502 W. Tyler, Lovington, New Mexico, regarding a domestic violence incident. Transcript of August 11, 2020,

evidentiary hearing (Tr.)[1] at 14, 39-40; Exhibit 1 (October 15, 2019, audio of 911 call). Defendant's roommate informed officers that Defendant had yelled at her, choked her, and discharged a firearm inside the residence. Exhibit 2 (October 15, 2019, lapel camera footage). After speaking with the alleged victim, Officer Stephanie Dowell, Officer Michael Cabello, and Detective Jeremiah Pillow, approached Defendant who was on the porch of the residence. Tr. at 15-18; Exhibit 2. Officer Dowell placed Defendant in handcuffs and read him his *Miranda* rights. Tr. at 16-19. Defendant stated he understood those rights and agreed to speak with the officers. Exhibit 2. He stated he put his hands on the victim's face, he might have had his hands on her neck, and he did not have a firearm but he lit a firecracker inside of the house. Tr. at 21-24; Exhibit 2. The officers obtained a search warrant for the residence and, in executing it, found ammunition and a Ruger Old Army revolver, which was missing one round. Tr. at 48-49.

On October 19, 2019, Officer Dowell and Detective Pillow knocked on the door at 502 W. Tyler to arrest Defendant on additional state charges, including being a felon in possession of a firearm. Tr. at 41-42; Exhibit 3 (October 19, 2019, lapel camera footage). Defendant was placed in handcuffs and driven to the police station in a police car. Exhibit 3. Detective Pillow advised Defendant not to say anything because he had not yet given Defendant his *Miranda* warnings. *Id.*

At the station, Detective Pillow conducted a video recorded interview of Defendant starting at 10:57 a.m. Exhibit 4 (October 19, 2019, recorded interview of Defendant) and Exhibit 5 (transcript of October 19, 2019, interview of Defendant). Detective Pillow recounted what was found at Defendant's residence and then advised Defendant of his *Miranda* rights and asked

---

[1] The Court's citation to the hearing transcript refers to the court reporter's original unedited version. Any final transcript may contain slightly different page numbers.

Defendant if he understood those rights. Defendant stated "Yeah, I do." Exhibit 5 at 3. The following exchange then occurred:

> Det. Pillow: All right. Do you want to speak about that incident?
>
> Defendant: Um, I don't.
>
> Det. Pillow: Okay.
>
> Defendant: Um, I guess what it is, it was at my house and [INAUDIBLE] position and everything at the house. It's not my brother's and sister's stuff. Whatever's there is mine. Whatever you go back and find, it's still going to be mine. It's —
>
> Det. Pillow: The revolver's yours?
>
> Defendant: Well, I mean, it's at my house, right?

*Id.* at 3-4; Exhibit 4 (while the transcript states "INAUDIBLE position and," the video shows Defendant saying "I'm in possession of"). Defendant confirmed firing the firearm but denied any involvement in stealing it. Exhibit 4. The interview lasted eight minutes. *Id.* Detective Pillow was armed but in plain clothes and conducted the interview alone. Tr. at 47-48. Defendant was handcuffed with his hands in front of him throughout the interview. Tr. at 48; Exhibit 4.

On January 15, 2020, officers were called to 1308 W. Tyler, Lovington, New Mexico, in reference to a shooting. Tr. at 53-54. Officers learned the same victim from the October 2019 incident and her boyfriend, George, were approached by Defendant outside the residence, and that Defendant pointed a small black firearm at George's head. Exhibit 6 (January 15, 2020, lapel camera footage). George began to walk backwards out of the driveway and Defendant pointed the firearm at George's legs and fired one round. *Id.* George was not hit and officers

3

recovered a bullet casing in the area where Defendant had allegedly been standing. *Id.* The United States asserts that officers later learned Defendant had taken a Springfield, Model XDE with serial number HE913528 from a vehicle parked near the residence. (Exhibit 8) (still photo of doorbell camera video showing Defendant opening the door of a vehicle on the property).

About 9:30 p.m. on January 25, 2020, Officer Cabello located Defendant walking along W. Tyler Ave., drew his firearm, and commanded Defendant to raise his hands and drop to his knees. Tr. at 25-30; Exhibit 9 (January 25, 2020, arrest report); Exhibit 13 (January 25, 2020, lapel camera footage). Defendant complied and was handcuffed. Tr. at 28-29. Officer Cabello located a Springfield Model XDE 9mm pistol with serial number HE913528 in the yard of 818 W. Tyler Ave., less than 300 feet from where Defendant was arrested. Exhibit 9.

At the station, Detective Pillow conducted another video recorded interview of Defendant. He advised Defendant of his *Miranda* rights and asked Defendant:

> Det. Pillow: You understand that, sir?
>
> Defendant: Right.
>
> Det. Pillow: You understand your rights?
>
> Defendant: Right.
>
> Det. Pillow: All right. So tonight you were picked up with what?
>
> Defendant: A firearm.

Exhibit 10 (January 25, 2020, recorded interview of Defendant); Exhibit 11 at 3 (January 25, 2020, transcript of January 25, 2020, interview of Defendant). Defendant also stated the firearm was a "9mm … Springfield Armory XD," and he told Detective Pillow that he took it from a vehicle that belonged to a family member, he shot at George's legs but was not sure if he had hit him, and he tossed the firearm when he saw the officer. Exhibit 11 at 4-8. The interview lasted

14 minutes, Detective Pillow was armed but in plain clothes, and no one else was present. Defendant was in handcuffs with his hands in front of him during the interview. Tr. at 54-56; Exhibit 10.

At the August 11, 2020, evidentiary hearing, Officer Cabello and Detective Pillow testified, and the Court found their testimony credible. The Court admitted the United States' Exhibits 1-13 without objection, and the United States played portions of the audio and video exhibits. *See* (Doc. 45). The Court also independently listened to and watched the entirety of the audio and video exhibits submitted by the United States.

II.   *Standard of Review*

The Fifth Amendment states that no individual "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As interpreted by *Miranda*, the Fifth Amendment requires that an individual subject to custodial interrogation be informed clearly and unequivocally: (1) that he "has the right to remain silent;" (2) that "anything said can and will be used against the individual in court;" (3) that "he has the right to consult with a lawyer and to have the lawyer with him during the interrogation;" and (4) "that if he is indigent[,] a lawyer will be appointed to represent him." 384 U.S. at 471. "Under *Miranda*, law enforcement officers must advise a suspect who is subjected to custodial interrogation that he has the right to remain silent, that statements can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed." *United States v. McCluskey*, 893 F.Supp.2d 1117, 1138 (D.N.M. 2012); *see also Missouri v. Seibert*, 542 U.S. 600, 608 (2004) ("[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.").

5

An individual in custody may waive Fifth Amendment protections if the decision to do so is done "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444.  The Government bears the burden of proving by a preponderance of the evidence that an individual's waiver of *Miranda* rights was both knowing and voluntary.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  In reviewing an individual's decision to waive constitutional rights, the Court must examine "the surrounding circumstances and the entire course of police conduct with respect to the suspect."  *Oregon v. Elstad*, 470 U.S. 298, 318 (1985).  In addition, the Court must consider the particular facts and circumstances of the case, "including the background, experience, and conduct of the accused."  *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008).

"On a motion to suppress, the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion."  *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020) (citations omitted); *United States v. Cortez*, 965 F.3d 827, 833 n.4 (10th Cir. 2020).  "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court."  *United States v. Hunnicutt,* 135 F.3d 1345, 1348 (10th Cir. 1998).  Factors beyond a witness's demeanor and tone of voice may weigh in a judge's decision to find that witness's testimony credible, including "[d]ocuments or objective evidence [that] may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

### III.  Discussion

The video and transcripts from the October 19, 2019, and January 25, 2020, interviews show that Defendant was read his *Miranda* rights before being questioned.  *See* Exhibit 4, Exhibit 5 at 3, Exhibit 10, and Exhibit 11 at 3.  Regarding the October 19, 2019, interview, Defendant contends he unambiguously invoked his right to remain silent and was subsequently questioned in violation of his Fifth Amendment rights.  As to both interviews, Defendant argues his Fifth Amendment rights were violated because he did not expressly waive his right to remain silent and that any waiver of his rights was not voluntary.  (Doc. 30) at 3-9.

#### A.  *Whether Defendant Unambiguously Invoked Right to Remain Silent*

Defendant asserts that on October 19, 2019, he invoked his right to remain silent when he answered "Um, I don't" when Detective Pillow asked him if he wanted to speak about the incident.  *See* Exhibit 5 at 3.  The Court agrees that this statement taken alone and without more that follows, is unambiguous.  However, Defendant almost immediately followed this statement by saying: "Um, I guess what it is, it was at my house and I'm in possession of everything at the house.  It's not my brother's and sister's stuff.  Whatever's there is mine.  Whatever you go back and find, it's still going to be mine."  Exhibit 5 at 3; Exhibit 4 at 2:38-3:00.  Significantly, Detective Pillow did not elicit this statement but instead said only "Okay" and listened while Defendant spoke.

When a defendant invokes the right to remain silent, a failure by law enforcement to "scrupulously honor" that right requires suppression.  *United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004); *see also Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (explaining when a suspect invokes right to remain silent or for an attorney "all questioning must stop").  However, to invoke the right to remain silent a defendant must make "a clear and unambiguous assertion of

7

the right to remain silent." *Rambo*, 365 F.3d at 910. When a defendant makes conflicting assertions about whether he wishes to speak to law enforcement officers, he fails to unambiguously invoke his right to remain silent. *United States v. Brown*, 287 F.3d 965, 972 (10th Cir. 2002). The Supreme Court has explained: "If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression if they guess wrong." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (citation omitted). "Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity." *Id.*

In addition, questioning may resume after a suspect invokes his right to remain silent if the suspect himself reinitiates the communication with law enforcement. *Edwards*, 451 U.S. at 484-85. In contrast, if law enforcement officers initiate an encounter after a suspect invokes his right to remain silent, the suspect's statements are presumed involuntary, even where the suspect executes a waiver. *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) (explaining this rule is designed to prevent police from badgering a suspect into waiving his previously asserted *Miranda* rights). However, an "exception to this bright-line rule is where the accused initiates the conversation with the police." *United States v. Giles*, 967 F.2d 382, 386 (10th Cir. 1992). Thus, if a defendant invokes his right to remain silent or for counsel, courts may admit his responses to further questioning "on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984); *see also Maryland v. Shatzer*, 559 U.S. 98, 104-05 (2010) ("The rationale of *Edwards* is that once a suspect indicates that he is not capable of undergoing custodial questioning without advice of counsel, any subsequent waiver that has come at the

authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect.").

Defendant states that he did not reinitiate communication with Detective Pillow and that "the officers did not end the interview at that point but continued to talk with [Defendant]." (Doc. 30) at 6.  To the contrary, both the video and transcript reflect that Defendant reinitiated the communication with Detective Pillow after Defendant stated he did not want to discuss the incident.  *See* Exhibit 5 at 3; Exhibit 4 at 2:38-3:00.  The evidence also shows the detective did not compel or pressure Defendant to do so.  In a similar case, a defendant stated he wanted to remain silent and asked for counsel, but as the officers were leaving the room, the defendant stated he wanted to talk to them.  *Fox v. Ward*, 200 F.3d 1286 (10th Cir. 2000).  The Tenth Circuit explained that "if the individual voluntarily initiates further communication with law enforcement officials, he can effectively waive his previously invoked right to counsel."  *Id.* at 1298 (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983); *Cooks v. Ward*, 165 F.3d 1283, 1288 (10th Cir. 1998)).  The Court further held that the defendant's waiver was voluntary because he "was fully appraised of his rights, he had previously exercised his right to remain silent absent his counsel … , and there is no evidence of coercion or compulsion on the part of the officers."  *Id.*; *see also United States v. De La Luz Gallegos,* 738 F.2d 378, 381 (10th Cir. 1984) ("Simply because a suspect has requested an attorney is not itself sufficient to prohibit the use of spontaneous declarations not brought about by the prompting of law enforcement officials."); *United States v. Kean*, 2005 WL 8163668 (D.N.M. 2005) (finding defendant "waived a previously invoked right to counsel by voluntarily initiating further communication with officers"); *cf. United States v. Pagan,* 2007 WL 593649, at *3 (D. Kan. 2007) (finding defendant did not waive previously invoked right to counsel because the officer, not defendant,

reinitiated the communication).  Accordingly, this Court concludes Defendant effectively waived his previously invoked right to remain silent by reinitiating communication with Detective Pillow after invoking his right to remain silent.

At the evidentiary hearing, Defendant argued that Detective Pillow was required to clarify any ambiguity in Defendant's waiver of his right to remain silent.  In making this argument, Defendant relied on *United States v. Rodriguez*, 518 F.3d 1072 (9th Cir. 2008).  In *Rodriguez*, the defendant was read his *Miranda* rights and asked if he wished to speak with an officer, to which he stated: "I'm good for tonight."  The Ninth Circuit Court of Appeals held the officer was under a duty to clarify the meaning of this ambiguous statement before questioning the defendant, and "if he meant he didn't want to talk, that right should have been 'scrupulously honored.'"  *Rodriguez*, 518 F.3d at 1080 (quoting *Michigan v. Mosley*, 423 U.S. 96, 104 (1975)).

Nevertheless, *Rodriguez* does not apply here for several reasons.  First, it is not binding on this Court.  Second, the Supreme Court in *Berghuis* effectively overruled *Rodriguez* by holding that when a defendant makes an "ambiguous or equivocal" invocation of his *Miranda* rights, or makes no statement at all, "the police are not required to end the interrogation … or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights."  560 U.S. at 381 (explaining "if a suspect receives adequate *Miranda* warnings, understands them, and has an opportunity to invoke the rights before giving any answers or admissions," officers have no obligation to clarify an ambiguous invocation of *Miranda* rights).  *Id.* at 387-88.  Third, *Rodriguez* is distinguishable because the officers in that case reinitiated questioning after the defendant stated, "I'm good for tonight."  The Ninth Circuit Court of Appeals emphasized they "do not hold that all waivers of *Miranda* rights must be *express*," and "[a] suspect who blurts out a confession after receiving and understanding a *Miranda* warning has unambiguously waived

his rights, albeit impliedly." 518 F.3d at 1080. In contrast, Defendant here reinitiated communication with the detective after invoking his *Miranda* rights.

The Court, therefore, concludes that Defendant's statement "Um, I don't" when asked if he wanted to talk about the incident was an unambiguous invocation of his right to remain silent. However, Defendant effectively waived this right by reinitiating communication with Detective Pillow, and Detective Pillow was not obligated to clarify Defendant's statements or end the interrogation.

### B. No Express or Written Waiver

Defendant next contends the statements he made on October 19, 2019, and January 25, 2020, should be suppressed because he did not expressly waive his *Miranda* rights either orally or in writing and also because any waiver was not made knowingly and voluntarily. (Doc. 30) at 6-9. The Supreme Court in *Berghuis* explained that "[t]he course of decisions since *Miranda*, informed by the application of *Miranda* warnings in the whole course of law enforcement, demonstrate that waivers can be established even absent formal or express statements of waiver that would be expected in, say, a judicial hearing to determine if a guilty plea has been properly entered." 560 U.S. at 383-84 ("The prosecution … does not need to show that a waiver of *Miranda* rights was express. An implicit waiver of the right to remain silent is sufficient to admit a suspect's statement into evidence."). The Tenth Circuit similarly has recognized that "[n]othing in *Miranda* requires an officer to ask specifically if the suspect waives his rights." *United States v. Varela*, 576 Fed. Appx. 771, 776 (10th Cir. 2014); *see also Butler*, 441 U.S. at 373 (explaining an implicit waiver can be made through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver"); *United States v.*

*Nelson*, 450 F.3d 1201, 1211 (10th Cir. 2006) ("[A]n implicit waiver can be inferred from the defendant's actions and words.") (citation omitted).

Accordingly, an express or written waiver of *Miranda* rights is not required. As explained above, Defendant effectively waived his *Miranda* rights on October 19, 2019, by reinitiating communication with the detective after invoking his right to remain silent. On January 25, 2020, Defendant was read his *Miranda* rights and asked if he understood them, to which Defendant responded "Right." Defendant was asked a second time if he understood his rights, and Defendant again said "Right." Exhibit 11 at 3. Detective Pillow then stated "All right. So tonight, you were picked up with what?" and Defendant answered, "A firearm." *Id.* While Defendant did not expressly waive his *Miranda* rights during this interview, the record reflects that he understood his rights and engaged in conduct indicating waiver by answering the detective's questions. Therefore, Defendant waived his *Miranda* rights during the January 25, 2020, interview as well. *See Berghuis*, 560 U.S. at 388 ("Thus, after giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived his or her *Miranda* rights.").

### C. Whether Defendant Knowingly and Voluntarily Waived Right to Remain Silent

The Court must also determine whether the United States has proven by a preponderance of the evidence that Defendant's waivers were made voluntarily, knowingly and intelligently. *Burson*, 531 F.3d at 1256. For a waiver to be valid, the Court must satisfy itself that it was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 1257. The Tenth Circuit has emphasized two features of this analysis:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002). The Court must also consider additional relevant factors, such as "the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect." *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).

Considering the totality of the circumstances, Defendant knowingly and voluntarily waived his *Miranda* rights on October 19, 2019, and January 25, 2020. On October 19, 2019, Defendant clearly stated "Yeah, I do," when asked if he understood his *Miranda* rights, and on January 25, 2020, he was asked twice if he understood his rights and he responded "Right" both times. Exhibit 5 at 3; Exhibit 11 at 3. Defendant was 41 years old at the time of the interviews, and while he asserts he is "of below-average intelligence and not well-educated," (Doc. 30) at 8, his discussions with the law enforcement officers demonstrate adequate understanding and the ability to respond appropriately. Defendant also has a lengthy criminal record, Exhibit 12 (Defendant's criminal history), so the "concepts encompassed by *Miranda* were not foreign to him." *Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004) (finding suspect's prior experience with criminal justice system supported finding of knowing and voluntary waiver).

In addition, the Court finds no evidence of coercive police conduct. The Court reviewed the videos of the officers' encounters with Defendant on October 15, 2019, October 19, 2019,

and January 25, 2020.  Exhibits 2-4, 6, 10, 13.  The officers at all times acted calmly and patiently, did not threaten physical force, and did not make promises to Defendant in exchange for his cooperation.  The Court further notes that Defendant was interviewed on the same day as his arrest, the interviews were eight and fourteen minutes in length, respectively, and the tone of the interviews were friendly and conversational.  Detective Pillow was in plain clothes and made no show of force.  Finally, Defendant does not allege that he was intoxicated, but even if he had, there is no evidence intoxication overcame his ability to knowingly and intelligently respond to questions and engage in the interviews.  *See United States v. Augustine*, 742 F.3d 1258, 1265 (10th Cir. 2014) ("[A] defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination."); *Smith*, 606 F.3d at 1276 (explaining "state of intoxication does not automatically render a statement involuntary"); *United States v. DeLeo*n, 326 F.Supp.3d 1257, 1294 (D.N.M. 2018) (finding knowing and voluntary waiver despite defendant's contention he was intoxicated because "at almost all times [he] responds quickly and responsively to questions").  Therefore, Defendant's waivers were knowing and voluntary.

    *D.  Conclusion*

Based on the foregoing, the Court concludes that Defendant knowingly and voluntarily waived his *Miranda* rights on October 19, 2019, and January 25, 2020.

IT IS THEREFORE ORDERED that Defendant's Amended Motion to Suppress (Doc. 30) is denied.

_____
UNITED STATES DISTRICT JUDGE